<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

M&M STONE CO.,                        )
                                      ) Civil Action
                Plaintiff             ) No. 07-cv-4784
                                      )
        vs.                           )
                                      )
ROGER J. HORNBERGER,                  )
  Individually and in His             )
  Official Capacity;                  )
J. SCOTT ROBERTS,                     )
  Individually and in His             )
  Official Capacity;                  )
MICHAEL D. HILL,                      )
  Individually and in His             )
  Official Capacity;                  )
KEITH A. LASLOW,                      )
  Individually and in His             )
  Official Capacity;                  )
MARTIN SOKOLOW,                       )
  Individually and in His             )
  Official Capacity;                  )
TELFORD BOROUGH AUTHORITY;            )
MARK D. FOURNIER;                     )
SPOTTS STEVENS & McCOY, INC.;         )
RICHARD M. SCHLOESSER;                )
DELAWARE RIVER BASIN COMMISSION; and  )
WILLIAM J. MUSZYNSKI,                 )
                                      )
                Defendants            )

                        *    *    *


APPEARANCES:

        BRIAN R. ELIAS, ESQUIRE and
        TIMOTHY T. MYERS, ESQUIRE
            On behalf of Plaintiff

        CHIEF DEPUTY ATTORNEY GENERAL BARRY N. KRAMER
            On behalf of Defendants Roger J. Hornberger,
            J. Scott Roberts, Michael D. Hill,
            Keith A. Laslow, and Martin Sokolow

ANDREW J. BELLWOAR, ESQUIRE and
MATTHEW R. KLINE, ESQUIRE
        On behalf of Defendants Telford Borough Authority
        and Mark D. Fournier

STACEY A. SCRIVANI, ESQUIRE and
GEORGE T. BELL, ESQUIRE
        On behalf of Defendants Spotts Stevens & McCoy,
        Inc. and Richard M. Schloesser

KENNETH J. WARREN, ESQUIRE,
KELLY A. GABLE, ESQUIRE, and
DYLAN J. STEINBERG, ESQUIRE
        On behalf of Defendants Delaware River Basin
        Commission and William J. Muszynski

*   *   *

**O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on four motions of
defendants to dismiss the Amended Complaint: (1) DEP Defendants'
Motion to Dismiss the Amended Complaint; (2) Defendant Telford
Borough Authority and Defendant Mark Fournier's Motion to Dismiss
Plaintiff's Amended Complaint; (3) Motion of Spotts Stevens &
McCoy, Inc. and Richard Schloesser to Dismiss Plaintiff's Amended
Complaint; and (4) Defendants Delaware River Basin Commission and
William J. Muszynski's Motion to Dismiss Plaintiff's Amended
Complaint.  Upon consideration of the briefs of the parties and
for the reasons articulated in this Opinion, I grant defendants'
motions to dismiss, and dismiss plaintiff's Amended Complaint in
its entirety.

- 2 -

Specifically, plaintiff's claims against defendant Telford Borough Authority, and against defendants Roger J. Hornberger, J. Scott Roberts, Michael D. Hill, Keith A. Laslow, and Martin Sokolow in their official capacities, are dismissed because they are barred by claim preclusion. Plaintiff's constitutional claims under 42 U.S.C. § 1983 for violations of substantive due process (Count I), Equal Protection (Count II), and procedural due process (Count III), and for First Amendment retaliation (Count IV), are dismissed because issue preclusion prevents plaintiff from being able to state claims upon which relief can be granted. Finally, I decline to exercise supplemental jurisdiction over plaintiff's state law negligence claim (Count V), and therefore dismiss it as well.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiff's pendent state law claim. See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in West Rockhill Township, Bucks County, Pennsylvania, which is located within this judicial district.

## STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits.  <u>See</u> <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992).  However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 nn.1-2 (3d Cir. 1995).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2).  That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  Twombly, 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Phillips, 515 F.3d at 231.  Nevertheless, "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief....  [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."  Phillips, 515 F.3d at 232.

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Twombly, 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 945 (emphasis in original); Haspel v. State Farm Mutual Auto Insurance Company, 241 Fed.Appx. 837, 839 (3d Cir. 2007).

The Third Circuit has explained that the "Twombly formulation of the pleading standard can be summed up thus: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This... simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal punctuation omitted).

## PROCEDURAL HISTORY

On November 15, 2005, the Commonwealth of Pennsylvania, Department of Environmental Protection ("DEP" or "Department") issued two compliance orders to plaintiff M&M Stone Co. ("M&M Stone").  These orders required M&M Stone to cease all mining activities at its Telford Quarry, and to restore or replace the water supplies that it allegedly affected.  The DEP issued a third compliance order on March 9, 2006.

On December 13, 2005, plaintiff appealed the first administrative order to the Commonwealth of Pennsylvania Environmental Hearing Board ("EHB" or "Board").  Plaintiff's appeals of DEP's other orders were subsequently incorporated into this appeal.

Plaintiff commenced this action by filing an eight-count Civil Action Complaint on November 14, 2007 ("original complaint").  Plaintiff's original complaint sought damages and injunctive relief against the DEP, the Telford Borough Authority

("TBA"), Spotts Stevens & McCoy, Inc. ("SSM"), the Delaware River Basin Commission ("DRBC"), and various individuals associated with these defendant entities.

On November 26, 2007, this case was reassigned from my colleague United States District Judge Thomas M. Golden to me.

The Board issued its Adjudication on January 31, 2008.[1] The Board dismissed M&M Stone's appeals, concluding that the DEP "satisfied its burden of proving that the two November 15, 2005 Orders and the March 9, 2006 Order were reasonable and in accordance with the law in all respects." M&M Stone I at 52.

Plaintiff filed its Petition for Review of the Board's decision on February 29, 2008.

On September 29, 2008, this court issued an Order and Opinion granting in part and denying in part defendants' motions to dismiss the original complaint.[2]

The Commonwealth Court of Pennsylvania issued its Memorandum Opinion on M&M Stone's appeal from the EHB on October 17, 2008.[3] The Commonwealth Court "agree[d] with the Board's determination that the cessation orders were reasonable

---

[1]    M&M Stone Co. v. Commonwealth of Pennsylvania, Department of Environmental Protection (M&M Stone I), No. 2005-343-L (Pennsylvania Environmental Hearing Board January 31, 2008).

[2]    M&M Stone Co. v. Commonwealth of Pennsylvania, Department of Environmental Protection (M&M Stone II), 2008 U.S.Dist. LEXIS 76050, 2008 WL 4467176 (E.D.Pa. September 29, 2008) (Gardner, J.).

[3]    M&M Stone Co. v. Department of Environmental Protection (M&M Stone III), No. 383 C.D. 2008 (Pa.Commw. October 17, 2008).

and in accordance with the law in all respects" and affirmed "the order of the Board to dismiss M&M's appeals of the Department's orders".  <u>M&M Stone III</u> at 21.

On October 20, 2008, plaintiff filed its five-count Amended Complaint against Roger J. Hornberger, J. Scott Roberts, Michael D. Hill, Keith A. Laslow, and Martin Sokolow in their individual and official capacities (collectively "DEP defendants"); the TBA and Mark D. Fournier (collectively "TBA defendants"); SSM and Richard M. Schloesser (collectively "SSM defendants"); and the DRBC and William J. Muszynski (collectively "DRBC defendants").

Count I of the Amended Complaint is brought against all defendants under 42 U.S.C. § 1983 and alleges violations of plaintiff's substantive due process rights.

Count II is brought pursuant to 42 U.S.C. § 1983 and claims that the DEP defendants in their individual capacities, defendant Fournier, the SSM defendants, and defendant Muszynski violated plaintiff's right to equal protection of the law.

In Count III, plaintiff asserts a claim for violation of its procedural due process rights under 42 U.S.C. § 1983 against the DEP defendants in their individual capacities, defendant Fournier, the SSM defendants, and defendant Muszynski.

Count IV asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against the DEP defendants in their

- 8 -

individual capacities and defendant Fournier.

Finally, in Count V plaintiff brings a state law negligence claim against all defendants.

On December 4, 2008, the Commonwealth Court denied M&M Stone's application for reconsideration/reargument or, in the alternative, en banc reargument.

M&M Stone filed a petition for allowance of appeal to the Supreme Court of Pennsylvania on January 5, 2009, which petition is still pending.

On September 8, 2009, I dismissed as moot the DRBC defendants' motion for partial reconsideration of my decision in M&M Stone II because plaintiff's Amended Complaint superseded its original complaint, mooting the motion.

## ALLEGED FACTS

Plaintiff alleges the following facts in its Amended Complaint, which I must accept as true for purposes of the motions to dismiss.  However, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination."  Nationwide Mutual Fire Insurance Company v. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009) (quoting New Hampshire v. Maine, 532 U.S. 742, 748-749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968, 977 (2001)).  Accordingly, issue preclusion bars plaintiff from arguing that the facts differ from those found in the prior state action.  See, e.g.,

<u>Evans v. Pearson Enterprises, Incorporated</u>, 434 F.3d 839, 851-852
(6th Cir. 2006); <u>Jacobs v. Law Offices of Leonard N. Flamm</u>,
2005 WL 1844642, *3 (S.D.N.Y. July 29, 2005); <u>Mosley v. Delaware
River Port Authority</u>, 2000 U.S.Dist. LEXIS 22402, *17-19 (D.N.J.
August 7, 2000).

Plaintiff M&M Stone owns and previously operated a
quarry in West Rockhill Township, Pennsylvania operated for the
production of construction and architectural stone and known as
the Telford Quarry.  (Amended Complaint at paragraph 20.)

The DEP defendants regulate quarry operations and water
quality in Pennsylvania.  (<u>Id.</u> at 22.)  Defendant TBA supplies
drinking water to Telford Borough residences and businesses and
to various neighboring communities.  (<u>Id.</u> at 23.)  TBA owns and
operates several deep wells encircling the Telford Quarry,
including TBA Well Nos. 4, 5, and 7.  (<u>Id.</u> at 30.)  Defendant
DRBC regulates water withdrawals in the Delaware River watershed,
which includes the Telford Quarry and the well fields and service
area of Telford Borough.  (<u>Id.</u> at 21.)

<u>Arsenic in TBA Well No. 4</u>

By June 2000, the TBA defendants knew that arsenic
levels in their public water supply from TBA Well No. 4 exceeded
new federal arsenic standards scheduled to take effect in
January 2006, and that they would therefore likely have to obtain
a new water supply or build an arsenic treatment facility by

January 2006.  (Id. at 24, 41, and 42.)  These projects could
cost millions of dollars.  (Id. at 42 and 44.)

      Even though the DEP defendants knew that the TBA could
not lawfully supply water from TBA Well No. 4 after January 22,
2006, the DEP did nothing to require the removal of the well from
service until at least July 2006.  (Id. at 126.)  The TBA pumped
public water with unacceptable levels of arsenic for
approximately six months, with defendants' knowledge.  (Id. at
127 and 131.)  Even though TBA Well No. 4 exceeded the federal
arsenic standard, TBA was advised that it could continue to pump
the well until at least December 2006, and possibly January 2007,
when the test results on an official sample from the well became
available.  (Id. at 146.)

<u>Well Dewaterings</u>

      When defendant TBA put TBA Well Nos. 5 and 7 into
service, and thereafter when it lowered the pump in TBA Well
No. 4, neighboring private wells and water supplies were
immediately adversely impacted.  (Id. at 31.)

      Previously, the DRBC concluded that the TBA was
responsible for certain of these private impacts and required the
TBA to repair them.  (Id. at 32.)  The TBA settled claims with
private well owners because of adverse affects caused by TBA Well
Nos. 4, 5, and/or 7.  (Id. at 33.)  All defendants knew or
subsequently learned that the TBA was adversely affecting private

wells.  (Id. at 34.)  The Telford Quarry did not cause these
private well dewaterings.[4]  Nevertheless, in 1999 and 2000, the
SSM defendants and the TBA defendants began conspiring to blame
M&M Stone for having a "negative impact" on TBA Well No. 4.
(Amended Complaint at paragraph 36.)

The TBA Defendants' Scheme

In October 1999, M&M Stone applied for a permit to
deepen the Telford Quarry by 50 feet.  (Id. at 39.)  Around the
time that the TBA defendants learned that they would need to shut
down TBA Well No. 4 or build an arsenic treatment facility, the
TBA became a major commentator on M&M Stone's quarry deepening
permit application.  (Id. at 43.)  The TBA defendants schemed to
extort private funding from M&M Stone for their own public
projects and to force M&M Stone to pay for a new public water
well and/or arsenic treatment facilities.  (Id. at 44.)

During the DEP's review of plaintiff's quarry deepening
permit application, the TBA sought to have the DEP defendants
require M&M Stone to replace TBA Well No. 4 with a new well or to
pay for the TBA's purchase of water from another public water
purveyor.  (Id. at 52.)  Although the TBA did not obtain a new
well at plaintiff's expense, the TBA obtained significant

---

[4]      Id. at 35.  However, before the Environmental Hearing Board,
multiple witnesses "credibly testified that the overwhelming cause" of the
private well dewaterings was the increase in pumping from the Telford Quarry.
M&M Stone I at paragraph 158.  The Board found that "the evidence fully
supports the conclusion that the pumping affected the Private Wells."  Id. at
page 38.

concessions that required M&M Stone to pay for and install an interconnection between the TBA public water supply system and a neighboring public water authority.  (Id. at 54.)

### The SSM Defendants Join the Conspiracy

In furtherance of this scheme, the TBA defendants retained SSM, including defendant Schloesser, to propagate a false record that the Telford Quarry was causing private well dewaterings.  (Id. at 45.)  SSM designed a monitoring well network to assess the impact of TBA Well No. 7 on neighboring wells.  (Id. at 46.)  During this pumping test of TBA Well No. 7 in 2003, a nearby private well, the Blum well, immediately went dry.  (Id. at 47.)  When the property owner contacted the TBA, defendant Fournier denied that TBA and SSM caused the dewatering and falsely blamed M&M Stone.  (Id. at 48.)  In addition, during 2006, the SSM defendants obstructed pumping tests and/or internal rehabilitation of TBA Well No. 4 because this would have established the well's declining productivity and that M&M Stone was not responsible for nearby private well dewaterings, foiling defendants' scheme to blame M&M Stone for the TBA's misconduct. (Id. at 50.)

### The DEP Defendants Join the Conspiracy

On September 14, 2004, the SSM defendants requested that the DEP and defendant Hill investigate the impact of the Telford Quarry on TBA Well No. 4.  (Id. at 56.)  Shortly

thereafter, defendants Hornberger, Roberts, Hill, Laslow, and Sokolow joined the TBA defendants and the SSM defendants in their conspiracy. (Id. at 57.)  The TBA defendants and the SSM defendants agreed to assist in the DEP's investigation, and immediately began to provide information to the DEP. (Id. at 59-60 and 62-64.)  On October 12, 2004, the SSM defendants insisted to defendant Hill that there was a "clear connection" between Telford Quarry operations and the performance of TBA Well No. 4, but internally acknowledged that there was no such connection.[5]

The DEP defendants knew that the Telford Quarry was too far from the affected area to cause the private well water losses and to impair TBA Well No. 4. (Amended Complaint at paragraph 68.)  Despite this, the DEP defendants focused their investigation virtually exclusively on M&M Stone, and not on TBA Well Nos. 4 and 5. (Id. at 70.)  The DEP's investigation contained a number of irregularities.  In particular, during the investigation, defendants Hornberger and Laslow sought to obtain future employment with one of M&M Stone's competitors. (Id. at 73.)

In March 2005, the SSM defendants advised the TBA defendants that "DEP wants M&M to start planning for a

---

[5]     Id. at 65-66.  However, the Environmental Hearing Board concluded that "there is no evidence that anything other than Quarry pumping has contributed materially to the water loss of TBA 4". M&M Stone I at page 47. Expert witnesses "credibly testified that the Quarry caused TBA 4's water loss." Id. at paragraph 76.  Moreover, "TBA 4's specific capacity increased steadily once the Quarry ceased operations and stopped pumping". Id. at 67.

replacement water source". (Id. at 78.)  Thus, in March 2005 –

eight months before the DEP issued its November 2005 orders –

defendant Hill, the TBA defendants, and the SSM defendants agreed

that M&M Stone would provide the new public well. (Id. at 79.)

Defendant Hill and SSM continued to secretly and

improperly share data, and the SSM defendants passed along this

information to the TBA defendants to keep pressure on the DEP to

blame M&M Stone for the well dewaterings. (Id. at 80-81.)

On July 26, 2005, the TBA defendants lowered the pump

in TBA Well No. 4 by an additional 46 feet. (Id. at 89.)  Two

days later, a private well went dry, and two more private wells

went dry shortly thereafter. (Id. at 90.)  The DEP defendants

failed to investigate the TBA's impact on the private wells, and

instead falsely blamed M&M Stone's Telford Quarry for all of the

private well dewaterings and the impaired supply in TBA Well

No. 4. (Id. at 91-92.)  In fact, it is high levels of minerals

in TBA Well No. 4 that contributed to the fouling of the pump and

the well itself.[6]

The DEP defendants rejected M&M Stone's request for

independent review of the DEP's findings and M&M Stone's offer to

cleanse TBA Well No. 4 at M&M Stone's expense and risk because

_____

[6]     Id. at 129.  However, the Environmental Hearing Board found that
"TBA 4's water loss cannot be explained by the condition of the well itself."
M&M Stone I at paragraph 44.  "There is... not enough mineral encrustation or
biofouling of TBA 4 to account for its decreased production."  Id. at 63.  "We
do not credit the fouling theory... the well is not materially compromised by
fouling."  Id. at page 43.

doing so would have established TBA Well No. 4's impairment and the TBA's impact on its neighbors. (Amended Complaint at paragraphs 95-98.)

### The DRBC Defendants Join the Conspiracy

In October 2005, M&M Stone requested that the DRBC defendants investigate the TBA, its permittee. (Id. at 108.) The DRBC knew that TBA Well Nos. 4, 5, and 7 were adversely affecting private wells, but the DRBC defendants refused to review the TBA's conduct, without a technical basis for doing so and in violation of their regulatory duties.[7] Moreover, the DEP defendants retaliated against M&M Stone for requesting this investigation. (Amended Complaint at paragraph 111.)

The DRBC defendants joined the conspiracy between August and October 2005 when they abdicated their responsibility to investigate the water losses and TBA's pumping of arsenic-laden water and allowed the other defendants to extort project funding from M&M Stone. (Id. at 148.) In February 2007, the DRBC defendants were advised that the private Jencson well went dry within two days of the TBA lowering TBA Well No. 4's pump in 2005, but the DRBC defendants again refused to review the TBA's conduct. (Id. at 149.)

_____

[7]    Id. at 108-109. While the Environmental Hearing Board noted that "pumping of TBA 4 had an impact on some of the surrounding wells... that impact pales in comparison to the much greater impact of the Quarry.... TBA 4's pumping alone would not have necessitated replacement of the Private Wells." M&M Stone I at page 43.

<u>DEP Orders Suspend M&M Stone's Mining Permit</u>

On November 2, 2005, the DEP defendants urged M&M Stone to replace the wells and noted that M&M Stone's "liability policy should cover the replacement." (<u>Id.</u> at 113.)  The DEP defendants conceded that it is their custom, policy, and practice to "err on the side of the [public] supply owner". (<u>Id.</u>)

When M&M Stone refused to pay for a new public water supply for the TBA, the DEP defendants arbitrarily, capriciously, and/or recklessly issued three administrative orders on November 15, 2005 and March 9, 2006 and shut down the Telford Quarry without any rational basis.[8]  Subsequently, on March 21, 2006, defendant Sokolow told M&M Stone that it was required to install the new wells as a "cost of doing business" like the "rest of the mining companies." (Amended Complaint at paragraph 118.)  However, no other regulatee has been required to pay for a new, arsenic-free water supply as a cost of doing business in the Delaware River watershed. (<u>Id.</u> at 120.)

<u>The Conspiracy Continues</u>

After M&M Stone appealed the DEP orders, the TBA defendants and the SSM defendants continued to conspire to defeat M&M Stone's appeal in furtherance of their conspiracy. (<u>Id.</u> at

---

[8]      <u>Id.</u> at 116 and 130.  However, the Environmental Hearing Board held that the DEP's orders "were reasonable and in accordance with the law in all respects." <u>M&M Stone I</u> at 52.  In affirming the Board, the Commonwealth Court explicitly stated that it "agree[d] with the Board's determination that the cessation orders were reasonable and in accordance with the law in all respects." <u>M&M Stone III</u> at 21.

133.)   The TBA defendants and the SSM defendants secretly
provided misinformation to the DEP for use in proceedings before
the Environmental Hearing Board in 2006 and 2007.   (Id. at 136
and 141.)

The TBA has not placed TBA Well No. 4 back into
operation because pumping it while the Telford Quarry is closed
would establish that TBA Well No. 4 is internally impaired, and
that defendants blamed M&M Stone solely to extort it to pay for a
new public water supply.   (Id. at 151-152.)

In 2007, after the Telford Quarry was closed, the TBA
placed TBA Well No. 7 back into operation, and the private Blum
well went dry again, as it had in 2003.   (Id. at 153.)   Because
the Telford Quarry was closed, the TBA was forced to accept
responsibility and replaced water for the Blum well at its own
expense.   (Id. at 154.)   Similarly, in June 2008, the private
Moyer well suffered dewatering in the area of TBA's wells.   (Id.
at 155.)

## DISCUSSION

Pursuant to the Full Faith and Credit Act, 28 U.S.C.
§ 1738, a federal district court must give the same preclusive
effect to a state court judgment that the adjudicating state
would give.   E.g., McLaughlin v. Fisher, 277 Fed.Appx. 207, 214
(3d Cir. 2008); Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.
1988).   Federal courts also give preclusive effect to decisions

- 18 -

of state administrative agencies that have been reviewed by state courts.[9]  McLaughlin, 277 Fed.Appx. at 214; Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993).  Accordingly, I apply the preclusion law of Pennsylvania here.

For preclusion to apply, Pennsylvania requires that the prior determination be a final judgment on the merits. Commonwealth of Pennsylvania, Department of Environmental Protection v. Fiore, 682 A.2d 860, 862 (Pa.Commw. 1996); Kaller's, Inc. v. John J. Spencer Roofing, Inc., 388 Pa.Super. 361, 368, 565 A.2d 794, 798 (1989); McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir. 1989).  A judgment is final "unless or until it is reversed on appeal."  Shaffer v. Smith, 543 Pa. 526, 530, 673 A.2d 872, 874 (1996); accord Prusky v. ReliaStar Life Insurance Company, 502 F.Supp.2d 422, 428 n.11 (E.D.Pa. 2007) (Dalzell, J.).  The pendency of an appeal does not defeat finality for purposes of preclusion.  Schuldiner v. Kmart Corporation, 450 F.Supp.2d 605, 609 (E.D.Pa. 2006) (Brody, J.); see In re Application of the Pennsylvania Turnpike Commission, 715 A.2d 1219, 1223 n.9 (Pa.Commw. 1998); O'Leary v. Liberty Mutual Insurance Co., 923 F.2d 1062, 1066 n.6 (3d Cir. 1991). Thus, the decision in the state action is a final judgment on the

---

[9]      In Section 1983 cases where state courts have not reviewed the agency decision, federal courts give preclusive effect only to state administrative agency factfinding.  McLaughlin, 277 Fed.Appx. at 214-215; Edmundson, 4 F.3d at 189.  Here, however, the Commonwealth Court of Pennsylvania has reviewed the Environmental Hearing Board's decision, so I give preclusive effect to both the agency's legal and factual determinations.

merits.

Claim preclusion and issue preclusion relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on judicial action by preventing inconsistent decisions. E.g., Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980); Magoni-Detwiler v. Pennsylvania, 502 F.Supp.2d 468, 474 (E.D.Pa. 2007) (Robreno, J.).

<u>Claim Preclusion (Res Judicata)</u>

Under Pennsylvania law, claim preclusion applies when the previous and instant actions share identity of four conditions: (1) the thing sued upon or for (that is, the issues); (2) the cause of action; (3) the persons and parties to the action; and (4) the quality or capacity of the parties suing or being sued. In re Iulo, 564 Pa. 205, 210, 766 A.2d 335, 337 (2001); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006). These conditions are satisfied as to defendant Telford Borough Authority, and as to defendants Hornberger, Roberts, Hill, Laslow, and Sokolow in their official capacities only. Accordingly, I dismiss defendant Telford Borough Authority from this action, and dismiss defendants Hornberger, Roberts, Hill, Laslow, and Sokolow in their official capacities, because plaintiff's claims against them are barred by claim preclusion.

First, there is identity of the thing sued upon or for. Where the same act or occurrence underlies both actions, the first requirement is satisfied.  See Gregory, 843 F.2d at 116-117.  Three Department of Environmental Protection orders suspending plaintiff's mining permit and requiring plaintiff to replace lost water supplies underlie both the state action and the instant action.  Thus, the first prerequisite for claim preclusion is met.

Second, the cause of action is the same.  Criteria relevant to this determination include whether the (1) acts complained of; (2) theory of recovery; (3) witnesses and documents; and (4) material facts alleged are the same in both actions.  See Turner, 449 F.3d at 549; O'Leary, 923 F.2d at 1065.

Whether causes of action are the same will "turn on the essential similarity of the underlying events giving rise to the various legal claims" rather than "the specific legal theory invoked."  Turner, 449 F.3d at 549; Gregory, 843 F.2d at 117. Cause of action "is defined broadly in transactional terms," Gregory, 843 F.2d at 117, and the "mere advancement of a different legal theory does not necessarily give rise to a different cause of action."  Turner, 449 F.3d at 549.  Notably, the United States Court of Appeals for the Third Circuit has explicitly stated that "claim preclusion may not be evaded simply by adding allegations of conspiracy to the very same activity

- 21 -

challenged in the first action." Gregory, 843 F.2d at 118.

Both the instant and state actions here are based on "the same cause of action, inasmuch as they are based on the same allegedly wrongful acts." Turner, 449 F.3d at 550. The acts complained of, necessary witnesses and documents, and material facts alleged are the same in both actions. Accordingly, the second requirement is also satisfied.

Third, there is identity of the persons and parties to the action. M&M Stone Co. is the plaintiff here and in the state action. Telford Borough Authority intervened in the state action and is named as a defendant here.

Defendants Hornberger, Roberts, Hill, Laslow, and Sokolow were not named in the state action, but their employer, the Commonwealth of Pennsylvania, Department of Environmental Protection, was.[10] "[G]overnmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body [and] may invoke a judgment in favor of the governmental entity...." Gregory, 843 F.2d at 120; accord Opdycke v. Stout, 233 Fed.Appx. 125, 129 n.6 (3d Cir. 2007); Edmundson, 4 F.3d at 191. This protection does not extend to defendants Hornberger, Roberts, Hill, Laslow, and Sokolow in their individual capacities, however. Edmundson, 4 F.3d at 191.

---

[10]    Defendant Keith A. Laslow is no longer employed by the Department of Environmental Protection.  Amended Complaint at paragraph 9.

- 22 -

Plaintiff argues that claim preclusion cannot apply because "[o]nly two (2) of the twelve (12) Defendants in this case were even parties to the EHB proceeding."[11]  Plaintiff's argument is misplaced.  As my colleague United States District Judge Gene E.K. Pratter recently explained

> Claim preclusion does not require that all parties to both actions are identical.  Instead, the doctrine only requires that the parties against which preclusion is sought are the same....  Addition of new parties, whether they are plaintiffs or defendants, does not negate the res judicata effect of the prior litigation....  If that was the case, a plaintiff could circumvent the claim preclusion doctrine altogether simply by joining another plaintiff or defendant to the action.

Sheridan v. NGK Metals Corporation, 2008 U.S.Dist. LEXIS 40926, *38-39 (E.D.Pa. May 21, 2008) (Pratter, J.) (citing Sims v. Mack Trucks, Inc., 463 F.Supp. 1068, 1069 n.1 (E.D.Pa. 1979) (Lord, C.J.); Adams v. American Bar Association, 400 F.Supp. 219, 226 (E.D.Pa. 1975) (Gerry, J.)).

Finally, the parties to this action remain in the same capacities that they had in the state action.  Accordingly, the fourth requirement is satisfied.

Thus, all four conditions for claim preclusion are satisfied as to defendant Telford Borough Authority, and as to defendants Hornberger, Roberts, Hill, Laslow, and Sokolow in

---

[11]    Plaintiff's Response to the DEP Defendants' Motion to Dismiss the Amended Complaint at 11; Plaintiff's Response to the TBA Defendants' Motion to Dismiss the Amended Complaint at 11; Plaintiff's Response to the SS&M Defendants' Motion to Dismiss the Amended Complaint at 11.

their official capacities.

### Claim Preclusion Bars Claims Not Raised

Claim preclusion "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." Balent v. City of Wilkes-Barre, 542 Pa. 555, 563, 669 A.2d 309, 313 (1995); Turner, 449 F.3d at 548; accord Gregory, 843 F.2d at 116.  Put another way, claim preclusion imposes a rule of "use it or lose it": it bars claims which could have been raised in the prior proceeding but were not.

Naturally, claim preclusion does not bar "a litigant from litigating in a second action a claim that could not have been raised in the first action because it was not within the jurisdiction of the first court." McNasby v. Crown Cork and Seal Co., Inc., 888 F.2d 270, 271-272 (3d Cir. 1989); accord Oppong v. First Union Mortgage Corporation, 215 Fed.Appx. 114, 117 (3d Cir. 2007); McCarter v. Mitcham, 883 F.2d 196, 201 (3d Cir. 1989). Thus, I next address whether the Environmental Hearing Board and the Commonwealth Court of Pennsylvania had jurisdiction over the claims that plaintiff did not raise in the state action but raises here.  If the Board and the Commonwealth Court had jurisdiction over these claims, claim preclusion bars plaintiff from raising them here now.

This Court has previously noted that "the

[Environmental Hearing] Board has the authority to hear and rule upon federal Constitutional claims." <u>Delaware County Safe Drinking Water Coalition, Inc. v. McGinty</u>, 2007 U.S.Dist. LEXIS 55327, *42 n.18 (E.D.Pa. July 27, 2007) (Pratter, J.).  The Supreme Court of Pennsylvania has held that "as applied" challenges to the constitutionality of statutes <u>must</u> be raised before the state agency or are waived, and that, therefore, "administrative agencies must address 'as applied' claims." <u>Lehman v. Pennsylvania State Police</u>, 576 Pa. 365, 381-382, 839 A.2d 265, 275-276 (2003).  The Environmental Hearing Board "has exclusive jurisdiction to determine whether or not a[n unconstitutional] taking has occurred." <u>Middle Creek Bible Conference Inc. v. Department of Environmental Resources</u>,[12] 165 Pa.Commw. 203, 216, 645 A.2d 295, 301 (1994).

In <u>A.H. Grove & Sons, Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources</u>, 70 Pa.Commw. 34, 38 n.2, 452 A.2d 586, 588 n.2 (1982), the Commonwealth Court of Pennsylvania noted that plaintiff "failed to raise his constitutional objections before the [Environmental Hearing] Board and is precluded, therefore, from raising them

---

[12]    Effective July 1, 1995, the Department of Environmental Resources was renamed the Department of Environmental Protection.  Act of June 28, 1995, P.L. 89, No. 18, § 501, as amended, 71 P.S. § 1340.501; <u>Lebanon Farms Disposal, Inc. v. County of Lebanon</u>, 538 F.3d 241, 244 n.6 (3d Cir. 2008). The Department of Environmental Protection exercises the same powers and performs the same duties and functions as the Department of Environmental Resources.  Act of June 28, 1995, P.L. 89, No. 18, § 503, as amended, 71 P.S. § 1340.503; <u>Lebanon Farms Disposal, Inc.</u>, 538 F.3d at 244 n.6.

here."  Similarly, in <u>Newlin Corporation v. Commonwealth of</u>
<u>Pennsylvania, Department of Environmental Resources</u>,
134 Pa.Commw. 396, 403, 579 A.2d 996, 1000 (1990), the
Commonwealth Court rejected as unpersuasive the argument that
constitutional claims could not be adjudicated before the
Environmental Hearing Board, and precluded plaintiffs from
raising their claims for the first time before the Commonwealth
Court.  If the Commonwealth Court requires parties to raise their
constitutional claims before the state Environmental Hearing
Board, clearly the Board has jurisdiction to entertain them.

I conclude that the Environmental Hearing Board had
subject matter jurisdiction to hear plaintiff's constitutional
claims.[13]  Accordingly, even to the extent that plaintiff did not

---

[13]     My September 29, 2008 Opinion in this case found that "[b]ecause
plaintiff cannot adequately raise its constitutional claim in the parallel
state proceeding, <u>Younger</u> abstention is not applicable."  <u>M&M Stone II</u> at 84.
To the extent that this finding in my September 29, 2008 Opinion is
inconsistent with my determination above, I now delete it from my previous
ruling.

As I stated in my prior Opinion, "[a]bstention under <u>Younger</u> is
appropriate only if (1) there are ongoing state proceedings that are judicial
in nature; (2) the state proceedings implicate important state interests; and
(3) the state proceedings afford an adequate opportunity to raise federal
claims."  <u>M&M Stone II</u> at 81 (quoting <u>Schall v. Joyce</u>, 885 F.2d 101, 106
(3d Cir. 1989)).

It appears that my September 29, 2008 Opinion may have erroneously
assigned the burden on the third prong of this test to defendants.  I wrote:
"Notwithstanding satisfaction of the first two <u>Younger</u> abstention
requirements, <u>defendants have not demonstrated</u> that the parallel state
proceedings provide an adequate forum in which plaintiff's constitutional
claims can be vindicated."  <u>M&M Stone II</u> at 83 (emphasis added).  However,
"the burden on this point rests on the <u>federal plaintiff</u> to show that state
procedural law barred presentation of [its] claims."  <u>Pennzoil Co. v. Texaco</u>
<u>Inc.</u>, 481 U.S. 1, 14, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1, 18 (1987) (emphasis
added); <u>Anthony v. Council</u>, 316 F.3d 412, 422 (3d Cir. 2003) (emphasis added).

(<u>Footnote 13 continued</u>):

raise its constitutional claims before the Board, claim

preclusion still bars the plaintiff from raising them here.

Because the conditions for claim preclusion are

satisfied as to defendant Telford Borough Authority, and as to

defendants Hornberger, Roberts, Hill, Laslow, and Sokolow in

their official capacities, I dismiss these defendants from this

---

(Continuation of footnote 13):

Thus, my conclusion rested on defendants' failure to satisfy a burden which is
not theirs to bear.

    Additionally, my previous Opinion erroneously suggested that
because the Pennsylvania Environmental Hearing Board did not consider
plaintiff's federal constitutional claims, plaintiff was unable to raise those
claims in the state proceeding.  In this regard, at page 84 of M&M Stone II I
stated

        Plaintiff's inability to raise its constitutional claim in
        the state proceedings is borne out through review of the
        January 31, 2008 Adjudication rendered by the Environmental
        Hearing Board.  The decision indicates that the only
        constitutional claim considered by the Board was a challenge
        to defendant Pennsylvania Department of Environmental
        Protection's three orders as an unconstitutional taking.

    To the extent that this statement in my September 29, 2008 Opinion
is also inconsistent with my determination above, I now also delete it from my
previous ruling.

    As discussed above, for purposes of claim preclusion, claims which
could have been raised - but were not - are barred.  Because I now find that
plaintiff could have raised its constitutional claims before the Environmental
Hearing Board, plaintiff's failure to do so does not suggest that plaintiff
was unable to raise these claims.  Rather, it makes these claims barred by
claim preclusion.

    Accordingly, any errors I may have committed in M&M Stone II by
denying defendants' motions to dismiss on the basis of Younger abstention are
now remedied by now dismissing all of Counts I, II, III, IV, and V against
some of those defendants because plaintiff's claims against them are barred by
claim preclusion, and by dismissing all of Counts I, II, III, and IV against
all defendants because plaintiff's claims against them are barred by issue
preclusion, and by exercising my discretion to decline supplemental
jurisdiction over plaintiff's remaining claim against all defendants for
negligence under state law in Count V.

action.[14]

### Issue Preclusion (Collateral Estoppel)

Issue preclusion, also known as collateral estoppel, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." Nationwide Mutual Fire Insurance Company, 571 F.3d at 310 (quoting New Hampshire v. Maine, 532 U.S. at 748-749, 121 S.Ct. at 1814, 149 L.Ed.2d at 977).

Under Pennsylvania law, issue preclusion applies if (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party, or in privity with a party, in the prior case; (4) the party, or person privy to the party, against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.  Office of Disciplinary Counsel v. Kiesewetter, 585 Pa. 477, 484, 889 A.2d 47, 50-51 (2005); City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989); Prusky v. ReliaStar Life Insurance

---

[14]    In any event, I find below that plaintiff's federal claims are barred by issue preclusion, and I decline to exercise supplemental jurisdiction over plaintiff's remaining state law claim.  Accordingly, I would dismiss plaintiff's claims against defendant TBA, and against the DEP defendants in their official capacities, even if they were not barred by claim preclusion.

Company, 532 F.3d 252, 265 (3d Cir. 2008); Lindquist v. Buckingham Township, 106 Fed.Appx. 768, 776 (3d Cir. 2004).

The party against whom issue preclusion is asserted, plaintiff M&M Stone Co., clearly was a party in the state action.[15]  As explained above, the state action is a final judgment on the merits.

### Full and Fair Opportunity

"A party has been denied a full and fair opportunity to litigate only when state procedures fall below the minimum requirements of due process as defined by federal law."  Bradley v. Pittsburgh Board of Education, 913 F.2d 1064, 1074 (3d Cir. 1990); see Minnick v. City of Duquesne, 65 Fed.Appx. 417, 423 (3d Cir. 2003); Witkowski, 173 F.3d at 205.  This is an "admittedly general standard."  Minnick, 65 Fed.Appx. at 423; Rider v. Pennsylvania, 850 F.2d 982, 991 (3d Cir. 1988).

"The core of due process is the right to notice and a meaningful opportunity to be heard."  LaChance v. Erickson, 522 U.S. 262, 266, 118 S.Ct. 753, 756, 139 L.Ed.2d 695, 700 (1998); Stevenson v. Carroll, 495 F.3d 62, 69 (3d Cir. 2007). Elements of due process include whether there is

---

[15]    For issue preclusion, "[t]he only requirement is, logically, that the party against whom estoppel is asserted be a party to the prior adjudication."  Witkowski v. Welch, 173 F.3d 192, 200 n.10 (3d Cir. 1999). "Pennsylvania does not require that the party asserting collateral estoppel be a party to the previous action."  Ashford v. Skiles, 837 F.Supp. 108, 113 n.3 (E.D.Pa. 1993) (Brody, J.).

> (1) notice of the basis of the governmental
> action; (2) a neutral arbiter; (3) an opportunity
> to make an oral presentation; (4) a means of
> presenting evidence; (5) an opportunity to
> cross-examine witnesses or to respond to written
> evidence; (6) the right to be represented by
> counsel; and (7) a decision based on the record
> with a statement of reasons for the result.

Rogin v. Bensalem Township, 616 F.2d 680, 694 (3d Cir. 1980); see

Di Loreto v. Costigan, 600 F.Supp.2d 671, 698 (E.D.Pa. 2009)

(Buckwalter, S.J.); Magoni-Detwiler v. Pennsylvania,

502 F.Supp.2d 468, 475 (E.D.Pa. 2007) (Robreno, J.), aff'd,

293 Fed.Appx. 928 (3d Cir. 2008).

The United States Court of Appeals for the Third

Circuit has found that a full and fair opportunity to litigate

exists where a party is able to present evidence, cross-examine

witnesses, and seek judicial review of the administrative

agency's determination.  In Howard v. Board of Education of East

Orange, 90 Fed.Appx. 571, 575 (3d Cir. 2003), the Third Circuit

explained that "the opportunity to cross examine witnesses for

bias, the existence of judicial review, and the sheer robustness

of the inquiry – [plaintiff] propounded 425 interrogatories, 175

document requests, deposed 3 witnesses, in a 14-day hearing – all

indicate that [plaintiff] had ample chance to defend himself."

Similarly, in Hitchens v. County of Montgomery, 98 Fed.Appx. 106,

115 (3d Cir. 2004), the Third Circuit found that plaintiff had a

full and fair opportunity to litigate where

> [t]he union presented [plaintiff's] testimony as
> well as the testimony of other pro-union former
> employees....  The union had the opportunity to
> present any documents or evidence it desired at
> the hearing.  To refute the union's claims,
> defendants presented prison supervisors who
> testified they were unaware of [plaintiff's] union
> activity.  These witnesses were available for
> cross-examination.  After the [board] held for
> defendants, the union had the opportunity but
> declined to file an exception to the hearing
> examiner's decision.

Here, it is clear that plaintiff has received due process which meets, and indeed exceeds, the minimum requirements of federal law.  Thus, plaintiff has had a full and fair opportunity to litigate in the state action.  Both the Environmental Hearing Board and the Commonwealth Court are neutral arbiters.[16]  Plaintiff was represented by counsel both before the Board and the Commonwealth Court.  Plaintiff filed various motions and exhibits,[17] and the Board heard expert

---

[16]     Plaintiff argues: "The state proceeding must give the plaintiff the requisite full and fair opportunity to litigate the issues presented in this case.  Public Service Mut. Ins. Co. v. Cohen, 616 F.2d 704, 708 (3d Cir. 1980).  Here, the pre-ordained orders were orchestrated by Defendants in secret."  Plaintiff's Response to the DEP Defendants' Motion to Dismiss the Amended Complaint at 15; Plaintiff's Response to the TBA Defendants' Motion to Dismiss the Amended Complaint at 15; Plaintiff's Response to the SS&M Defendants' Motion to Dismiss the Amended Complaint at 15.

        The "pre-ordained orders" plaintiff refers to are those of the Pennsylvania Department of Environmental Protection, not the Board or the Commonwealth Court.  Plaintiff's Amended Complaint alleges that "the TBA Defendants and the SS&M Defendants already knew in October 2005, that they were going to be issuing, through the DEP Defendants, more than one pre-conceived order against M&M."  Amended Complaint at paragraph 104.  Neither the Environmental Hearing Board nor the Commonwealth Court is a defendant in this action.

[17]     Environmental Hearing Board Docket, Exhibit E to the DEP Defendants' Motion to Dismiss the Amended Complaint.

testimony from a "small army of experts."[18]  The Environmental
Hearing Board issued a 52 page adjudication (<u>M&M Stone I</u>), which
was "a detailed decision containing 165 findings of fact
developed after a six-day hearing."[19]  On review, the
Commonwealth Court authored a 21 page opinion (<u>M&M Stone III</u>).

### Identical Issue & Essential to the Judgment

I have found that there was a final judgment on the
merits, that plaintiff was a party in the state action, and that
plaintiff had a full and fair opportunity to litigate in the
state action.  Because these requirements for issue preclusion
are satisfied, issue preclusion bars plaintiff from relitigating
each issue that is identical and essential to the prior judgment.

An issue is "identical" if "the same general legal
rules govern both cases and that the facts of both cases are
indistinguishable as measured by those rules."  <u>Hitchens v.</u>
<u>County of Montgomery</u>, 98 Fed.Appx. 106, 112 (3d Cir. 2004);
<u>Suppan v. Dadonna</u>, 203 F.3d 228, 233 (3d Cir. 2000).  "To defeat
a finding of identity of the issues for preclusion purposes, the
difference in the applicable legal standards must be
substantial."  <u>Hitchens</u>, 98 Fed.Appx. at 112; <u>Raytech Corporation</u>
<u>v. White</u>, 54 F.3d 187, 191 (3d Cir. 1995).

Issue preclusion requires that the determination in the

---

[18]   <u>M&M Stone I</u> at 35.

[19]   <u>M&M Stone III</u> at 8.

prior proceeding was essential to the judgment because of
"concerns that the first court 'may not have taken sufficient
care in determining an issue that did not affect the result' and
that 'appellate review may not be available to ensure the quality
of the initial decision.'"  <u>Prusky</u>, 532 F.3d at 266 (quoting
18 Charles Alan Wright et al., Federal Practice & Procedure
§ 4421 (2d ed. 2002)).

Law of the Case Doctrine

Under the law of the case doctrine, "when a court
decides upon a rule of law, that decision should continue to
govern the same issues in subsequent stages in the same case....
This rule of practice promotes the finality and efficiency of the
judicial process by protecting against the agitation of settled
issues." <u>American Civil Liberties Union v. Mukasey</u>,
534 F.3d 181, 187 (3d Cir. 2008) (quoting <u>Christianson v. Colt
Industries Operating Corp.</u>, 486 U.S. 800, 816, 108 S.Ct. 2166,
2177, 100 L.Ed.2d 811, 830 (1988)).

Accordingly, I will apply my legal determinations in
<u>M&M Stone II</u> as the law of the case.

42 U.S.C. § 1983

Plaintiff's constitutional claims are actionable
against defendants through 42 U.S.C. § 1983.  Section 1983 is an
enabling statute that does not create any substantive rights, but
provides a remedy for the violation of federal constitutional or

statutory rights.  M&M Stone II at 37-38 (citing Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000)).  To state a claim under § 1983, a plaintiff must allege that a defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right.  Id. at 38.

To state a § 1983 conspiracy claim, a plaintiff must allege that two or more conspirators reached an agreement to deprive him of a constitutional right under color of law.  Id. at 39 (citing Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993)).  "[A] plaintiff must allege both a civil rights violation and a conspiracy involving state action."  Id. (citing Quintal v. Volk, 2000 WL 1367948, *2 (E.D.Pa. September 21, 2000) (Joyner, J.)).

"[O]therwise private acts are performed under color of state law for purposes of 42 U.S.C. § 1983, when they are part of a conspiracy with state officials."  Goadby v. PECO, 639 F.2d 117, 120 n.2 (3d Cir. 1981).  A defendant acts under color of state law when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 172 (3d Cir. 2007).  This nexus may be shown "by establishing that the state and a private actor conspired with one another to violate an individual's rights."  Id.

Plaintiff fails to allege a § 1983 conspiracy here because, as discussed below, issue preclusion prevents plaintiff from showing that defendants deprived it of any federal constitutional rights.

### Count I (Substantive Due Process)

To state a claim for violation of its substantive due process rights, plaintiff must allege "that defendants' conduct deprived plaintiff of a protected interest involving an arbitrary abuse of official power which 'shocks the conscience'." M&M Stone II at 49 (quoting United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399 (3d Cir. 2003) (Alito, J.)). Plaintiff "must establish that (1) it has a property interest protected by due process, and (2) the government's deprivation of that property shocks the conscience." Id. (citing Cherry Hill Towers, L.L.C. v. Township of Cherry Hill, 407 F.Supp.2d 648, 654 (D.N.J. 2006)). Plaintiff is precluded from alleging that defendants' conduct shocks the conscience, and therefore is unable to state a claim for violation of substantive due process.

The shocks the conscience "standard reaches only conduct at the edges of tort law's scheme of culpability.... Allegations of mere negligence are insufficient to constitute a substantive due process violation." M&M Stone II at 50 (citing County of Sacramento v. Lewis, 523 U.S. 833, 848-849,

- 35 -

118 S.Ct. 1708, 1717-1718, 140 L.Ed.2d 1043, 1058-1059 (1998)).
"Only the most egregious conduct can be said to be arbitrary in
the constitutional sense." Id. (citing Lewis, 523 U.S. at 846,
118 S.Ct. at 1716, 140 L.Ed.2d at 1057).  "[G]overnment conduct
is arbitrary and irrational where it is not rationally related to
a legitimate government purpose." Id. at 50-51 (citing Sameric
Corporation of Delaware, Inc. v. City of Philadelphia,
142 F.3d 582, 595 (3d Cir. 1998)).  It is clear, then, that the
standard for conduct which shocks the conscience greatly exceeds
the threshold for conduct which is merely unreasonable.

       The Environmental Hearing Board held that the DEP's
orders "were reasonable and in accordance with the law in all
respects." M&M Stone I at 52.  In affirming the Board, the
Commonwealth Court explicitly stated that it "agree[d] with the
Board's determination that the cessation orders were reasonable
and in accordance with the law in all respects." M&M Stone III
at 21.  Issue preclusion bars plaintiff from asserting otherwise.
And if plaintiff is precluded from pleading that defendants'
conduct was unreasonable, plaintiff is clearly unable to allege
that defendants' conduct shocks the conscience.[20]  "The relevant

       [20]    Plaintiff correctly argues that this Court previously held that
the allegations in plaintiff's original complaint shock the conscience.  See
Plaintiff's Response to the DEP Defendants' Motion to Dismiss the Amended
Complaint at 16; Plaintiff's Response to the TBA Defendants' Motion to Dismiss
the Amended Complaint at 16-17; Plaintiff's Response to the SS&M Defendants'
Motion to Dismiss the Amended Complaint at 19; Plaintiff's Response to the
DRBC Defendants' Motion to Dismiss the Amended Complaint at 11; M&M Stone II

                                             (Footnote 20 continued):

level of arbitrariness required in order to find a substantive

due process violation involves not merely action that is

unreasonable, but, rather, something more egregious....”

Hunterson v. DiSabato, 308 F.3d 236, 246-247 (3d Cir. 2002);

Wareham v. Stowitzky, 2007 U.S.Dist. LEXIS 13649, *28 (E.D.Pa.

February 26, 2007) (DuBois, S.J.).

        Plaintiff has failed to state a claim for a violation

of its substantive due process rights.  Accordingly, I dismiss

Count I from plaintiff's Amended Complaint.

                 Count II (Equal Protection)

        Plaintiff is not a member of a protected class and

therefore must pursue its Equal Protection claim under a “class

of one” theory.  See Glenn v. Barua, 252 Fed.Appx. 493, 500

(3d Cir. 2007); see also Aardvark Childcare and Learning Center,

Inc. v. Township of Concord, 401 F.Supp.2d 427, 446-447 (E.D.Pa.

2005) (Giles, C.J.); Montanye v. Wissahickon School District,

399 F.Supp.2d 615, 619 (E.D.Pa. 2005) (DuBois, S.J.).

        To state a “class of one” Equal Protection claim,

“plaintiff must allege that (1) the defendant treated it

differently from others similarly situated, (2) the defendant did

---

(Continuation of footnote 20):

at 52-53.  This Court's holding in M&M Stone II was based on the allegations
in plaintiff's November 14, 2007 Civil Action Complaint.  Since then, the
Board issued its Adjudication on January 31, 2008 and the Commonwealth Court
issued its Memorandum Opinion on October 17, 2008.  The findings in the state
action that defendants' conduct was reasonable preclude plaintiff from
claiming that defendants' conduct shocks the conscience.

so intentionally, and (3) there was no rational basis for the difference in treatment." M&M Stone II at 54 (citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)); accord Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060, 1063 (2000); Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).  Thus, "[i]f there was a rational basis for the action of the decisionmaker, there is no equal protection class of one violation...." Montanye, 399 F.Supp.2d at 620; see Philadelphia Housing Authority v. United States Department of Housing and Urban Development, 553 F.Supp.2d 433, 438-439 (E.D.Pa. 2008) (Diamond, J.).

        The United States Court of Appeals for the Third Circuit has cautioned that it "do[es] not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation.  It may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach." Eichenlaub v. Township of Indiana, 385 F.3d 274, 287 (3d Cir. 2004); accord, e.g., DeWees v. Haste, 620 F.Supp.2d 625, 638 (M.D.Pa. 2009); Timoney v. Upper Merion Township, 2004 U.S.Dist. LEXIS 24678, *15 (E.D.Pa. December 7, 2004) (Giles, C.J.).  As discussed above, plaintiff fails to state a substantive due process claim here.  And, for similar reasons,

below, plaintiff's Equal Protection claim must also be dismissed.

Under rational basis review, a challenged government action must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>FCC v. Beach Communications, Inc.</u>, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993); <u>Angstadt v. Midd-West School District</u>, 377 F.3d 338, 345 (3d Cir. 2004); <u>Philadelphia Housing Authority</u>, 553 F.Supp.2d at 437.

Here, we have far more than that.  As discussed above, the Environmental Hearing Board held that the DEP's orders "were reasonable and in accordance with the law in all respects," <u>M&M Stone I</u> at 52, and the Commonwealth Court "agree[d] with the Board's determination that the cessation orders were reasonable and in accordance with the law in all respects." <u>M&M Stone III</u> at 21.  Plaintiff is precluded from relitigating this issue. Because defendants' conduct was found to be reasonable, plaintiff cannot allege that defendants lacked a rational basis for their actions.[21]

_____

[21]   Plaintiff correctly notes that this Court previously held that plaintiff's "allegations support a finding of arbitrary unconstitutional conduct."  <u>See</u> Plaintiff's Response to the DEP Defendants' Motion to Dismiss the Amended Complaint at 18; Plaintiff's Response to the TBA Defendants' Motion to Dismiss the Amended Complaint at 18; Plaintiff's Response to the SS&M Defendants' Motion to Dismiss the Amended Complaint at 21; Plaintiff's Response to the DRBC Defendants' Motion to Dismiss the Amended Complaint at 13; <u>M&M Stone II</u> at 55.  This Court's holding in <u>M&M Stone II</u> was based on the allegations in plaintiff's November 14, 2007 Civil Action Complaint.  Since

(Footnote 21 continued):

- 39 -

Accordingly, plaintiff cannot make out an Equal Protection claim, and I dismiss Count II from plaintiff's Amended Complaint.

## Count III (Procedural Due Process)

To state a Section 1983 claim for deprivation of procedural due process, "plaintiff must allege that (1) it was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) the procedures available to it did not provide due process of law." M&M Stone II at 56. "Procedural due process is satisfied when a state affords a full judicial mechanism with which to challenge the administrative decision at issue.... 'The availability of a full judicial mechanism... preclude[s] a determination that the decision was made pursuant to a constitutionally defective procedure.'" Id. at 56-57 (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 681 (3d Cir. 1991)). Further, the failure to hold a pre-deprivation hearing did not deprive plaintiff of procedural due process. Id. at 58-60.

Here, plaintiff not only had the right to challenge the Department of Environmental Protection's actions before the

_____

(Continuation of footnote 21):

then, the Board issued its Adjudication on January 31, 2008 and the Commonwealth Court issued its Opinion on October 17, 2008.  The findings in the state action that defendants' conduct was reasonable preclude plaintiff from claiming that defendants' conduct lacked a rational basis.

Environmental Hearing Board, it did so.  See M&M Stone I.
Moreover, plaintiff sought review of the Board's decision in the
Commonwealth Court.  See M&M Stone III.  As noted above, the core
of due process is the right to notice and a meaningful
opportunity to be heard – and plaintiff has received this due
process.  Both the Environmental Hearing Board and the
Commonwealth Court are neutral arbiters, and plaintiff was
represented by counsel before both of them.  Plaintiff filed
various motions and exhibits, and the Board heard the testimony
of numerous experts.  Both the Board and the Commonwealth Court
issued lengthy written opinions with their findings.

        Thus, plaintiff enjoyed a full judicial mechanism with
which to challenge the administrative decision against it, and
therefore cannot state a claim for violation of its procedural
due process rights.  Accordingly, I dismiss plaintiff's
procedural due process claim.

### Count IV (First Amendment Retaliation)

        To state a claim for First Amendment retaliation,
"plaintiff must allege two things: (1) that the activity in
question is protected by the First Amendment, and (2) that the
protected activity was a substantial factor in the alleged
retaliatory action."[22]  M&M Stone II at 61 (quoting Hill,

---

        [22]    The United States Court of Appeals for the Third Circuit has also
expressed this test in a three-part formulation.  Under this version of the

(Footnote 22 continued):

455 F.3d at 241).

Plaintiff bears the initial burden of showing that its activity was constitutionally protected, and that this conduct was a "substantial" or "motivating" factor in defendants' decision to retaliate.  Mt. Healthy City School District Board of Education v. Doyle, 492 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977); Suppan, 203 F.3d at 235.  If plaintiff satisfies this burden, the burden then shifts to defendants to show "by a preponderance of the evidence that [they] would have reached the same decision... even in the absence of the protected conduct."  Id.  If defendants show this, "no relief will be required."  Suppan, 203 F.3d at 236.

In Mt. Healthy, plaintiff teacher alleged that defendant school board decided not to renew his contract in retaliation for plaintiff exercising his First Amendment rights. The Mt. Healthy doctrine has been extended beyond the public employment context and applied to many different First Amendment retaliation claims.  See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Lauren W. v. DeFlaminis, 2005 U.S.Dist. LEXIS 41517, *61-62 (E.D.Pa. June 1, 2005) (Davis, J.); Taylor v. City of Philadelphia, 2004 U.S.Dist. LEXIS 9422,

---

(Continuation of footnote 22):

test, plaintiff must allege: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."  M&M Stone II at 61 (quoting Eichenlaub, 385 F.3d at 282).

*40 (E.D.Pa. May 20, 2004) (Giles, C.J.).

      The Anderson court noted with approval that the Courts
of Appeals for the First and Ninth Circuits have applied
Mt. Healthy to First Amendment retaliation claims involving the
denial or revocation of land use permits.  In Nestor Colon-Medina
& Sucesores, Inc. v. Custodio, 964 F.2d 32 (1st Cir. 1992),
plaintiffs argued that defendants denied their permits to
construct a hazardous waste disposal facility, a domestic waste
disposal facility, and a condominium development in retaliation
for plaintiffs' political expression.  The First Circuit applied
Mt. Healthy to the alleged "retaliatory refusal to grant a
permit."  Id. at 41.  In Soranno's Gasco, Incorporated v. Morgan,
874 F.2d 1310, 1312-1313 (9th Cir. 1989), "plaintiffs contend[ed]
that the defendants suspended [plaintiffs'] petroleum bulk plant
permits and discouraged its customers from doing business with
[plaintiffs] in retaliation for... publicly criticizing the
defendants and initiating litigation against them."  The Ninth
Circuit applied Mt. Healthy and held that "[i]f the plaintiffs
can establish that the decision to suspend the permits was made
because of [plaintiffs'] exercise of constitutionally protected
rights, they have established a first amendment violation, and
are entitled to relief under section 1983."  Id. at 1314.

      The parties appear to agree that the Mt. Healthy
analysis governs plaintiff's First Amendment retaliation claim,

- 43 -

which is asserted against the DEP defendants in their individual capacities and defendant Fournier.  Plaintiff cites the Third Circuit's application of Mt. Healthy in Laskaris v. Thornburgh, 733 F.2d 260 (3d Cir. 1984).  Plaintiff's Response to the DEP Defendants' Motion to Dismiss the Amended Complaint at 22.  The DEP Defendants cite Mt. Healthy itself and argue that "even if the orders were motivated in part by First Amendment protected activity, they would have been issued regardless of that activity.  That the orders would have been issued regardless of protected activity is a full defense to M&M's claim."[23] Memorandum of Law in Support of DEP Defendants' Motion to Dismiss the Amended Complaint at 23.  And the TBA defendants cite Board of County Commissioners v. Umbehr, 518 U.S. 668, 675, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843, 852 (1996), which applies Mt. Healthy.[24]  Memorandum of Law in Support of TBA Defendants' Motion to Dismiss the Amended Complaint at 15.

Assuming arguendo that plaintiff has sufficiently alleged that it engaged in protected First Amendment activity and that this was a substantial or motivating factor in defendants'

---

[23]    Moreover, the DEP defendants "incorporate[d] by reference... the arguments for dismissal asserted by defendants Telford Borough Authority... in their respective motions to dismiss... the Amended Complaint".  DEP Defendants' Motion to Dismiss the Amended Complaint at paragraph 7.

[24]    Moreover, the TBA defendants "incorporate[d] by reference... the briefs and arguments set forth by the DEP Defendants... in their respective motions to dismiss the Amended Complaint".  Defendant Telford Borough Authority and Defendant Mark Fournier's Motion to Dismiss Plaintiff's Amended Complaint at paragraph 9.

decision to retaliate, plaintiff still fails to state a claim for First Amendment retaliation.  The state action determined that defendants would have reached the same decision even in the absence of protected First Amendment activity, and issue preclusion bars relitigation of this issue.

The EHB found that the DEP had "no less restrictive means to restore and replace the lost water supplies" and that the DEP "had <u>no choice</u> but to cease the operation." <u>M&M Stone I</u> at 45 (emphasis added).  Clearly, if the DEP had "no choice", it would have ordered cessation whether or not plaintiff engaged in protected First Amendment activity.  On appeal, the Commonwealth Court "agree[d] with the Board's determination that the cessation orders were reasonable and in accordance with the law in all respects." <u>M&M Stone III</u> at 21.  This finding in the state action shows that defendants would have reached the same decision even in the absence of protected conduct, and issue preclusion bars this court from finding otherwise here.

Accordingly, Count IV fails to state a claim upon which relief can be granted and is dismissed from plaintiff's Amended Complaint.

<u>Count V (Negligence)</u>

28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction... if... the district court has dismissed all claims over which it has

original jurisdiction...."  See, e.g., Johnson v. Knorr, 477 F.3d 75, 86 n.15 (3d Cir. 2007); Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 181 (3d Cir. 1999).  "This administrative decision is left to the sound discretion of the district court" and is reviewed for abuse of discretion.  Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).

Here, I have dismissed all four of plaintiff's federal claims.  I decline to exercise supplemental jurisdiction over plaintiff's remaining claim, for negligence under state law, and therefore dismiss Count V of plaintiff's Amended Complaint.

**CONCLUSION**

For all the foregoing reasons, I grant the following motions: (1) DEP Defendants' Motion to Dismiss the Amended Complaint; (2) Defendant Telford Borough Authority and Defendant Mark Fournier's Motion to Dismiss Plaintiff's Amended Complaint; (3) Motion of Spotts Stevens & McCoy, Inc. and Richard Schloesser to Dismiss Plaintiff's Amended Complaint; and (4) Defendants Delaware River Basin Commission and William J. Muszynski's Motion to Dismiss Plaintiff's Amended Complaint.

Defendant Telford Borough Authority, and defendants Roger J. Hornberger, J. Scott Roberts, Michael D. Hill, Keith A. Laslow, and Martin Sokolow in their official capacities, are dismissed from this action because plaintiff's claims against these defendants are barred by claim preclusion.

Counts I, II, III, and IV of plaintiff's Amended Complaint are dismissed against all defendants for failure to state a claim upon which relief can be granted.

I decline to exercise supplemental jurisdiction over plaintiff's remaining state law claim for negligence, and therefore dismiss Count V of plaintiff's Amended Complaint.